Thomas J. KIRSCHLING, Plaintiff,

v.

The LAKE FOREST SCHOOL DIS-TRICT, a School District of the State of Delaware; the Lake Forest Board of Education, a Local School Board of the State of Delaware; H. Earl Roberts, Individually and in his Official Capacity as President of the Lake Forest Board of Education; and Roberta W. O'Neal, Individually and in her Official Capacity as Member of the Lake Forest Board of Education, Defendants.

Civ. A. No. 86–357 MMS.

United States District Court, D. Delaware.

June 3, 1988.

Francis S. Babiarz, and Kathryn J. Laffey, of Biggs & Battaglia, Wilmington, Del., for plaintiff.

Mason E. Turner, Jr., and Karen R. Lines, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. for defendants.

MURRAY M. SCHWARTZ, Chief Judge.

Based on the defendants' withdrawal of an employment offer, plaintiff, Thomas J. Kirschling, filed suit in diversity alleging breach of contract and promissory estoppel, and under 42 U.S.C. § 1983 alleging violation of his due process rights. Plaintiff seeks specific performance as well as compensatory damages from defendants the Lake Forest School District ("the District"), the Lake Forest Board of Education ("the Board"), and two members of the Board, Mr. Roberts and Mrs. O'Neal, in their official capacities, collectively referred to as the Lake Forest defendants.[1] Plaintiff also seeks punitive damages from Mr. Roberts and Mrs. O'Neal in their individual capacities. The Lake Forest defendants filed a motion for summary judgment on several grounds.

## I. Background

In April 1986, plaintiff applied to the Lake Forest School District for the position of secondary school principal. According to established procedures, the Board of Education conducted the initial screening and final interviews. Based upon state and local salary schedules, Richard Moretti, assistant for administrative services, calculated the salary for Mr. Kirschling and the other two finalists. Mr. Moretti determined that, if hired, Mr. Kirschling's salary would be $38,366.00 plus approximately $2,000.00 in annual increases.

On May 21, 1986, the Board of Education met and decided to extend an offer to Mr. Kirschling; and, at the Board's direction, Dr. Gerald Lysik, Superintendent of the School District and acting as Executive Secretary to the Board, telephoned Mr. Kirschling to offer him the position, which Mr. Kirschling indicated he would take. On the following day, May 22, the Board passed a formal resolution appointing Mr. Kirschling as principal, and Dr. Lysik informed Mr. Kirschling of the action. On May 27, 1986, Dr. Lysik sent plaintiff a letter stating that he had been appointed as principal and enclosing a two-year Delaware School Administrator's contract for his signature. All of the contract terms were completed except for salary, which, instead of naming a specific figure, referenced state and local salary schedules. The contract provided for termination only for just cause and for termination notice and hearings. At the beginning of June, Mr. Kirschling visited the District at Dr. Lysik's request. On this visit, they discussed Mr. Kirschling's assumption of the position, and he was introduced as the new principal.

Shortly thereafter, members of local education associations contacted Dr. Lysik and Mrs. O'Neal, then President of the Board, and told them of unfavorable information

---

1. This opinion will discuss only the claims against defendants currently in the case. Plaintiff's first amended complaint added the Chichester Education Association, the Pennsylvania State Education Association, Kathleen Neary, Robert Strunk, the Lake Forest Education Association, the Delaware State Education Association, Elizabeth Weinberg and Victoria Boyd. Plaintiff's second amended complaint did not name these defendants or the three school board members and the acting superintendent listed in the first amended complaint.

concerning Mr. Kirschling. Mr. Roberts, then Vice–President of the Board, contacted a member of the Chichester Education Association, who told him that several sexual harassment grievances had been filed against Mr. Kirschling.

Acting at Mr. Robert's direction, Dr. Lysik telephoned Mr. Kirschling on June 6, 1986 and informed him that, because of new information, the Board no longer supported his appointment as principal. Dr. Lysik recommended that Mr. Kirschling withdraw his acceptance of the position. Mr. Kirschling requested an opportunity to present his case to the Board. Dr. Lysik informed him that the Board was not interested in hearing from him.

In a Board meeting on June 9, 1986 Dr. Lysik represented to the Board that Mr. Kirschling was removing his candidacy for the position as principal. The Board then resolved "to accept the oral withdrawal of Thomas J. Kirschling as high school principal" and appointed someone else to the position. On June 16, 1986 counsel for plaintiff sent Dr. Lysik a letter informing him that Mr. Kirschling was not withdrawing his acceptance, and had recalled several pending employment applications in reliance upon the Board's offer.

## II. *Analysis*

### A. *Summary Judgment Standard*

As recently enunciated by the United States Supreme Court,

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

If the non-movant has the burden of persuasion and the movant has identified facts sufficient to demonstrate that no issue of material fact remains, the non-moving party must identify for the court facts which would defeat the motion. *Childers v. Joseph,* 842 F.2d 689, 694–95 (3d Cir.1988). In order to defeat the motion, the non-moving party must produce evidence of facts material to the claim "such that a reasonable jury could return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Inferences from the evidence submitted and doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 900 (3d Cir.), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

### B. *Contract Validity*

In their motion for summary judgment, defendants allege no binding contract exists, because there was no writing in compliance with the Statute of Frauds and no mutuality of obligation.

Delaware law mandates that "any agreement that is not to be performed within the space of one year from the making thereof" may not be enforced "unless the contract is reduced to writing, or some memorandum, or notes thereof, [which] are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing...." *Del.Code Ann.* tit. 6, § 2714(a) (1975).

The Delaware Statute of Frauds requirement applies to employment contracts that cannot possibly be performed within one year. *Haveg Corp. v. Guyer,* 58 Del. 535, 211 A.2d 910, 912–13 (1965). Because the contract sent to Mr. Kirschling was for two years, the agreement falls within the Statute of Frauds.

Plaintiff maintains the minutes of Board meetings signed by Dr. Lysik and the letter to Mr. Kirschling informing him of the offer, also signed by Dr. Lysik, together with the contract, constitute a sufficient writing to satisfy the Statute of Frauds.

To determine if the writings satisfy the Statute of Frauds, the Court must examine whether the writings contain the necessary signatures and whether they are

sufficiently complete. Two issues will be addressed concerning signatures: which party must sign and which documents must be signed. Defendants do not dispute Dr. Lysik was acting as an agent of the Board in signing the relevant minutes and letter, and in sending the letter and contract. The statute only requires the writing be signed by the party to be charged, not the party bringing suit. *Cartmell v. Nigro*, 19 Del.Ch. 231, 165 A. 625, 626 (1933). In an employment contract, it is immaterial that the employee has not signed because the employer is the party to be charged. Dr. Lysik's signature on the letter and minutes is sufficient and Mr. Kirschling's is not required. The requirement that the writing must be signed by the party to be charged is met.

In addition, if the memorandum consists of several writings, only one of the writings must be signed. *Abramson v. Delrose, Inc.*, 132 F.Supp. 440, 442 (D.Del. 1955). Because the letter and minutes were signed by Dr. Lysik, the contract and the salary notations by Mr. Moretti need not be signed to satisfy the Statute of Frauds. The signature requirement is met.

Attention is now turned to the sufficiency of the writings under the Statute of Frauds. The required writings may consist of several documents and need not be made with the intent to create a sufficient writing under the statute. *Abramson*, 132 F.Supp. at 442.

A writing meeting the Statute of Frauds requirements:

> (a) reasonably identifies the subject matter of the contract,
> (b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and
> (c) states with reasonable certainty the essential terms of the unperformed promises in the contract.

*Restatement, Second, of Contracts*, § 131. Each of these factors will be addressed in the above order.

■ First, the Court will consider whether the writings reasonably identify the subject matter of the contract. The minutes of the Board meeting of May 22, 1986 signed by Dr. Lysik state that the Board unanimously accepted Mr. Kirschling's appointment as principal. The letter of May 27, 1986 signed by Dr. Lysik informs Mr. Kirschling the Board has appointed him as principal and encloses a contract for his signature. The enclosed standard Delaware School Administrators Contract has all terms completed except salary, which has a notation "[a]ccording to state and local salary schedules." Together these writings identify the subject matter of the contract to be a two-year employment contract for the position of principal.

The second factor is whether the writings are adequate to indicate that a contract has been offered. The signed minutes of the May 21, 1986 Board meeting state the Board directed Dr. Lysik to offer the position to Mr. Kirschling and he accepted. The signed minutes of the May 22, 1986 Board meeting contain the Board's acceptance of Mr. Kirschling's appointment. The May 27 letter states the Board has appointed Mr. Kirschling as principal and enclosed a contract for his signature. Together these writings indicate the Board extended a contract offer to the plaintiff.

■ The last factor to be addressed is whether the writing "states with reasonable certainty the essential terms." The standard contract sent to Mr. Kirschling has all the terms completed except for salary, which has a notation "[a]ccording to state and local salary schedules." The issue is whether the notation as to salary is sufficient for Statute of Frauds purposes. Although salary is an essential part of most employment contracts, the failure to state the dollar amount of salary in the contract sent to Mr. Kirschling does not bar him under the Statute of Frauds. The written contract refers to state and local salary schedules. The state schedules are published and the local schedules are available through the school district. Based upon Mr. Kirschling's past experience, Mr. Moretti, an administrative assistant at the district, made a written calculation of the salary, and estimated the Delaware legislature would authorize an additional $2,000

annual increase for the 1986–87 school year. Mr. Moretti stated that he had no flexibility in determining salary. In addition, state and local regulations specify vacation and sick leave, as well as insurance benefits. The lack of information on any moving expenses or additional leave time the Board might have given Mr. Kirschling does not mean the salary cannot be established. A salary can be calculated to satisfy the Statute of Frauds. The Court finds the Statute of Frauds to be satisfied.[2]

■ The next issue is whether the oral acceptance by Mr. Kirschling created a binding contract. The defendants maintain Dr. Lysik's letter of May 27, 1986 required that the offer of employment be accepted only by Mr. Kirschling's signature on the contract, and its return. Paragraph two of the letter states "[a] two-year contract is enclosed for your signature and return to my office, along with other requested credentials." In addition, the letter informs Mr. Kirschling of his appointment, requests that he schedule a visit to the district and offers Dr. Lysik's assistance with relocation.

The appointment was not made conditional upon Mr. Kirschling's signature. The letter does not state that the offer must be accepted only in writing, but states that the Board "appoint*ed* [Mr. Kirschling] as principal" (emphasis added). Mr. Kirschling stated his oral acceptance of the offer in his telephone call of May 21, 1986 with Dr. Lysik. He indicated his continuing acceptance in his conversation of May 22, 1986 in which Dr. Lysik told him the Board had formally moved to appoint him. Further, until Dr. Lysik's telephone call of June 6, 1986, both parties acted as if they had a valid contract for employment beginning July 1, 1986. At Dr. Lysik's invitation, Mr. Kirschling visited the District, and was oriented and introduced as the new principal. Mr. Kirschling's oral acceptance created an enforceable contract.

Defendant also argues plaintiff may not obtain specific performance of the contract, as requested, because no mutuality of obligation exists. Because defendants could not obtain an order specifically enforcing their employment contract, they maintain that plaintiff may not. Plaintiff's request for injunctive relief derives from his section 1983 claim, not his contract claim, and therefore mutuality of obligation is irrelevant. Plaintiff's request for specific performance does not defeat his contract claims.[3]

I conclude the Statute of Frauds does not bar plaintiff's claim; and plaintiff has a valid contract, enforceable against defendants.[4]

### C. *Deprivation of Property Under 42 U.S.C. § 1983*

To maintain his claim under 42 U.S.C. § 1983 Mr. Kirschling must establish two elements: (1) that he was deprived of a right, privilege or immunity secured by the laws or Constitution of the United States; and (2) that the action at issue was taken by a person or persons acting under color of state law.[5] *Parratt v. Taylor*, 451 U.S.

**2.** Defendants' assertion that the Delaware Superior Court case of *Asher v. A.I. Du Pont Institute of the Nemours Foundation*, No. 84C–JL–71 (Del. Super.Ct., June 19, 1987) [available on WEST-LAW, 1987 WL 14876], supports their case is misguided. In *Asher* the court was concerned with whether, within the context of wrongful discharge, the employee handbook and the employer's policy manual granted the plaintiff a right to be dismissed only for cause. *Id.* at 1–3.

**3.** Since the employment contract was for two years and will be up June 30, 1988, specific performance relief is moot for all practical purposes.

**4.** Because the Court finds that the Statute of Frauds does not bar plaintiff's claim, the Court

need not address plaintiff's assertion that defendant is estopped from relying on the Statute of Frauds.

**5.** 42 U.S.C. § 1983 states in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceedings for redress.
42 U.S.C. § 1983 (1982).

527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed. 2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Riley v. Jeffes,* 777 F.2d 143, 145 (3d Cir. 1985). Defendants do not dispute the second element has been satisfied since they must concede their actions were under color of state law. Defendants focus solely on the first element maintaining plaintiff lacks a protected property interest, and therefore has no cognizable claim under 42 U.S.C. § 1983.

The Court has found the contract to be an enforceable contract containing a two-year term and a clause providing for removal only for just cause. Nonetheless defendants assert no property interest was implicated because it was not an interest in "continued" employment. Defendants also contend they took no action depriving plaintiff of any constitutional rights.

The analysis of issues raised by defendants will proceed as follows: first, whether Mr. Kirschling had a protected property interest in employment; second, what process was due Mr. Kirschling to protect this interest; third, whether sufficient process was provided and the adequacy of post deprivation remedies; and fourth, whether the Board is liable for Dr. Lysik's actions.

Recent decisions by the United States Supreme Court and the United States Court of Appeals for the Third Circuit clarify the validity of plaintiff's asserted property interest. The United States Supreme Court reaffirmed that property interests are not created by the U.S. Constitution but by "existing rules or understandings that stem from an independent source such as state law...." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532,

538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).

■ A protected property interest in employment can be created prior to the actual commencement of employment. *See Stana v. School District of Pittsburgh,* 775 F.2d 122, 125–27 (3d Cir.1985). The plaintiff in *Stana* contended her removal from the teacher eligibility list violated her due process rights. *Id.* at 123–24. The Third Circuit appellate court found that, although the State statutes did not create a property interest, the established policies of the school district did create an interest. *Id.* at 126–27. Noting that the case before it presented circumstances not present in other eligibility list cases, the court held that remaining on the eligibility list was a "legitimate entitlement" triggering due process protections. *Id.* at 126–27.[6] *See also Anderson v. City of Philadelphia,* 845 F.2d 1216, 1221 (3d Cir.1988) (state law and policies determine to what consideration persons on an eligibility list are entitled).

■ Under *Stana* the contract created a protected property interest.[7] Surely if retention on the eligibility list created a property interest in *Stana,* the circumstances at issue here establish an interest. Mr. Kirschling went beyond the eligibility list phase. The policies of the Board spell out the procedures to be followed prior to hir-

---

6. Defendants' reliance on *Harris v. City of Wilmington,* 644 F.Supp. 1483 (D.Del.1986), is misplaced. In *Harris,* the Court found that disciplinary probationers had no property interest in remaining on a promotion eligibility list or in receiving a promotion. *Id.* at 1489–90. In the instant case, the Court is concerned not with a probationary employee but with a person who has a valid employment contract, but has not yet begun to work.

7. Defendants contend under state law a binding employment relationship may be created only

by a signed employment contract. Although defendants are correct in asserting that Del. Code Ann. tit. 14, § 1329 contemplates written contracts for professional employees signed by a board of education, the statute does not prevent the creation of employment relationships in other ways. The Court ruled above that under Delaware law the memorandums and writings signed by Dr. Lysik constitute a written two-year contract between Mr. Kirschling and the Board.

ing. The Board followed its procedures and forwarded a written two-year employment contract to the plaintiff. Paragraph six of the contract provides the Board cannot terminate the contract "except for good and just cause," and sets forth mandatory hearing procedures in the case of termination. The Court found this contract valid under state law. Although Mr. Kirschling had not yet begun to serve as principal, he had a legitimate entitlement to that position created by the Board's policies and actions and the contract terms.

■ Having found Mr. Kirschling has a property interest, the next issue is, under the due process clause of the Fourteenth Amendment of the United States Constitution, what process is due plaintiff to protect that interest. The Court must look to federal and not state law for the procedures required to protect plaintiff's property interest in future employment. *See Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492–93. The Court in *Loudermill* held that a civil service employee subject to dismissal only for just cause must be afforded a pretermination hearing, with the opportunity to respond to charges. *Id.* at 542–45, 105 S.Ct. at 1493–95. Implementing the decision in *Loudermill,* the Third Circuit appellate court in *Stana* found that officials must hold a hearing to allow the plaintiff to respond to charges made against her prior to removing her from the employment eligibility list. 775 F.2d at 127–28.

Pretermination hearings protect the individual's employment interest and facilitate accurate decision-making by allowing for presentation of the employee's side of the case. *Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1493–94. Both interests would be served here. Mr. Kirschling withdrew other job applications in reliance upon the Board's commitment to employ him as principal. The Board attempted to rescind their offer based upon allegations of sexual harassment by local education associations without allowing plaintiff to respond to the highly inflammatory charges. The Court finds that Mr. Kirschling should have been

afforded notice of the charges and an opportunity to present his side of the case prior to the termination of his employment contract.

■ Defendants, however, assert that the Supreme Court decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), defeats plaintiff's claim that insufficient due process was provided. The *Parratt* Court held Due Process guarantees not to be implicated in a negligent deprivation of property if adequate post-deprivation remedies exist. *Parratt,* 451 U.S. at 541–44, 101 S.Ct. at 1916–17.[8] The Court later clarified that where property interests were lost because of an established government procedure rather than the random and unauthorized acts at issue in *Parratt,* post-deprivation remedies are insufficient. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982).

In *Stana,* the Third Circuit examined the holding in *Parratt* and found that post-deprivation remedies were adequate for violations caused by official negligence, because the government has no way of predicting negligence and holding a hearing prior to commission of a negligent act. *Stana,* 775 F.2d at 130. However, when "the acts at issue were those of an official in a supervisory position, acting within the area of his authority, the governmental entity [is] in a position to provide some predeprivation process." *Id.* (citing *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984)). *See also Farris v. Moeckel,* 664 F.Supp. 881, 891–92 (D.Del. 1987) (if acts forming basis of claim are in furtherance of municipal policy *Parratt* not applicable).

Post-deprivation remedies are inadequate for the termination of an employment offer. *Loudermill* and *Stana* require that the Board afford a hearing to Mr. Kirschling prior to withdrawing their offer of employment. The acts of the Board were not

---

**8.** The Court in *Daniels* held that negligent acts by officials do not implicate the Due Process Clause guarantee. *Daniels,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986).

the negligence of low level employees. The Board is the governmental entity at issue. The members of the Board knew when they rescinded the offer of employment it was practicable to offer Mr. Kirschling a hearing prior to demanding his withdrawal. In fact, Mr. Kirschling repeatedly asked for a hearing in his conversation of June 6 with Dr. Lysik, and was told it would not be given. In addition, it is unclear if Mr. Kirschling was ever fully informed of the allegations against him.

 Finally, defendants contend Dr. Lysik acted independently of the Board, and not pursuant to their policies, in denying Mr. Kirschling a hearing, and the Board and its members are not liable. For the purposes of liability under section 1983, the school board and the school district are comparable to municipal entities. In Delaware, school boards and districts are semi-autonomous local political entities and not state entities entitled to eleventh amendment protection. *Smith v. New Castle County Vocational–Technical School District,* 574 F.Supp. 813, 818–19 (D.Del.1983).

 A single action by a municipality is sufficient to establish liability under section 1983. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). It is true a section 1983 plaintiff may not use the theory of respondeat superior to establish municipal liability based upon the actions of a municipal employee. *Id.* at 478, 106 S.Ct. at 1297–98 (citing *Monell v. Department of Social Services of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). However, the governmental entity is liable for the actions of an employee only when the entity officially orders or sanctions the employee's actions. *City of St. Louis v. Praprotnik,* ──── U.S. ────, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298).

 Plaintiffs do not base their claim of constitutional violations by the Board and District upon a theory of respondeat superior. Plaintiffs assert Dr. Lysik was carrying out a decision of the Board in denying a hearing to Mr. Kirschling prior to terminating the offer of employment. Denial of a hearing by the Board is a decision for which it incurs liability under Section 1983.

Upon close examination of the depositions of Mr. Kirschling, Dr. Lysik, and Board members, the Court is unable to determine whether Dr. Lysik was acting on his own, or at the Board's direction, in terminating the offer without providing Mr. Kirschling an opportunity to be heard. In the procedural posture of this case inferences are taken in favor of the non-moving party. As a consequence, a material issue of fact remains as to whether Dr. Lysik was carrying out an official decision of the Board.

Summary judgment must be denied defendants with respect to the adequacy of plaintiff's property interest, the due process protections required, and liability of the Board.

### D. Availability of Punitive and Compensatory Damages From Individual School Board Members

Defendants seek summary judgment that plaintiff may recover neither punitive nor compensatory damages from the individual defendants, Mr. Roberts and Mrs. O'Neal, in their individual capacity.[9] Defendants assert a qualified immunity from suit and plaintiff's failure to provide sufficient facts to establish liability for punitive damages.

#### 1. Qualified Immunity

The first issue is whether individual defendants are entitled to qualified immunity.[10] The Supreme Court ruled in *Wood v.*

---

**9.** Plaintiff has withdrawn his claim for punitive damages against the Lake Forest School District, the Lake Forest Board of Education and individual defendants acting in their official capacity.

**10.** The Board, the District, and the individuals sued in their official capacities may not assert qualified immunity as a defense. *See Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Hynson v. City of Chester,* 827 F.2d 932, 934 (3d Cir.1987), *cert.*

*Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975), that school board members sued in their individual capacity are entitled to qualified immunity against section 1983 claims. As subsequently modified by the Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), "officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11] The Court must use an objective standard and consider whether a reasonably competent public official would have known of the rights allegedly violated. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39; *Hynson v. City of Chester,* 827 F.2d 932, 934 (3d Cir.1987), *cert. denied, Delaware County Prison Board v. Hynson,* —— U.S. ——, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988). *See Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (in action against police officer, standard is "a reasonably well-trained officer in [defendant's] position . . ."). Although the unlawfulness of the official's action must be apparent from the contemporary law, *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Court of Appeals for the Third Circuit has not required a strict factual congruence between previous cases and the circumstances in which the defendant official acted. *Hicks v. Feeney,* 770 F.2d 375, 379–80 (3d Cir. 1985). *See also, Bennis v. Gable,* 823 F.2d 723, 733 (3d Cir.1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Anderson,* 107 S.Ct. at 3039, *Lee v. Mihalich,* 847 F.2d 66, 69 (3d Cir.1988).

To withstand a motion for summary judgment the defendant must plead the qualified immunity, *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736–37, and must uphold the burden of proving the immunity. *Losch v. Borough of Parkesburg,* 736 F.2d 903, 909 (3d Cir.1984). Since one purpose of qualified immunity is to protect the official from going to trial, the Court must determine whether plaintiff's complaint alleges acts violating clearly established law. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). The Supreme Court has directed that summary judgment be entered in the case of insubstantial claims by plaintiff. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Losch,* 736 F.2d at 909. Qualified immunity is ordinarily an issue of law to be determined by a court on a motion for summary judgment. *Czurlanis v. Albanese,* 721 F.2d 98, 108 (3d Cir.1983).

Plaintiff's second amended complaint clearly articulates a constitutional violation. Plaintiff maintains that under state law he had a protected property interest in future employment and that defendants were required to afford him some kind of hearing prior to terminating the offer of employment.

The next inquiry is whether the law was established sufficiently such that a reasonably competent school board member would have known Mr. Kirschling was entitled to a hearing. In *Loudermill,* the Supreme Court mandated pretermination hearings for a civil service employee subject to dismissal only for just cause. 470 U.S. at 541, 105 S.Ct. at 1492–93. In 1985, the United States Court of Appeals for the Third Circuit construed *Loudermill* to apply to removal from an eligibility list when established school district policies made placement on the list a central factor in awarding teaching positions. *Stana,* 775

---

*denied, Delaware County Prison Board v. Hynson,* —— U.S. ——, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988).

**11.** The immunity of school board members under *Wood v. Strickland* originally involved both a subjective and objective test of good faith. 420 U.S. at 321, 95 S.Ct. at 1000. In *Harlow* the Court discarded the subjective inquiry required

by *Wood.* 457 U.S. at 818, 102 S.Ct. at 2738. *See also Czurlanis v. Albanese,* 721 F.2d 98, 108 (3d Cir.1983). Although *Harlow* concerned federal officials' immunity from suits brought under the United States Constitution, the same immunity law applies to suits against state and local officials under § 1983. *Harlow,* 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30.

F.2d at 126–27 & n. 3. Based upon these cases, Mr. Kirschling had a clearly established right in 1986 to a hearing prior to the cancellation of his employment contract.

The next question is whether a reasonably competent school board member would have known of this right. The Board of Education minutes and the submitted depositions reflect that the Board members made certain personnel decisions for the School District. A reasonably competent Board member knows there are legal consequences to the termination of an employment contract. In fact, the contract given to Mr. Kirschling contains a just cause provision and requires termination hearings. In addition, Mr. Kirschling specifically requested a meeting before the Board to explain his side of the story.

The law concerning Mr. Kirschling's right to a hearing was clearly established at the time the Board terminated his contract. Further, a reasonably competent school board member should have been on notice that some kind of process was due the plaintiff, and at a minimum should have inquired further and discovered that a hearing was required.

 Defendants assert that the Delaware State Tort Claims Act, Del.Code Ann. tit. 10, § 4001 *et seq.* (1986), immunizes them from Section 1983 suits. The language of the statute provides immunity for certain entities and officials "[e]xcept as otherwise provided by the Constitution or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction...." Del.Code Ann. tit. 10, § 4001 (1986). Delaware state law cannot immunize defendants from suit in federal court under the United States Constitution. In addition, any protection provided by the act against state law claims applies to tort claims and not breach of contract claims.

The Court finds that defendants Mr. Roberts and Mrs. O'Neal may not assert a qualified immunity defense in responding to that portion of plaintiff's claim seeking compensatory and punitive damages.

### 2. *Punitive Damages*

 Punitive damages may be imposed under section 1983 against individual defendants whose conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Bennis,* 823 F.2d at 734. If there is a callous disregard, evil intent or motive need not be shown. *Bennis,* 823 F.2d at 734. On a motion for summary judgment the Court must resolve all inferences and issues of credibility in favor of the non-moving party. *Chipollini,* 814 F.2d at 900.

Plaintiff has identified for the Court deposition testimony from which a fact-finder could conclude that the Board members acted with reckless indifference to his federally protected right to a hearing before termination of his contract. The Board wanted to avoid any controversy associated with Mr. Kirschling and, according to Dr. Lysik, had made up their minds concerning the plaintiff. In his deposition Mr. Kirschling states he was told the Board would remove him if he refused to submit a resignation. Nothing in the record indicates the Board desired to hold a hearing or even inquired about their constitutional obligations. Contrary to defendants' position, a finder of fact could infer that the Board had determined not to afford Mr. Kirschling a hearing, and to terminate his offer immediately. A disputed issue of material fact precludes grant of defendants' motion for summary judgment on the unavailability of punitive damages.

### E. *Measure of Damages*

 Both parties agree that, if successful, plaintiff's claim for lost salary must be reduced by his duty to mitigate damages. Damages under section 1983 are usually determined according to common law tort principles. *Memphis Community School District v. Stachura,* 477 U.S. 299, 306, 106 S.Ct. 2537, 2542–43, 91 L.Ed.2d 249 (1986). At common law in a wrongful discharge suit, damages are measured by the salary an employee would have earned, less any

amount that was actually earned or could have been earned through reasonable diligence. *State v. Berenguer*, 321 A.2d 507, 511 (Del.Super.1974).

Defendants ask for summary judgment on the issue that plaintiff may not receive the full $94,000 requested as compensatory damages. The $94,000 represents the salary and benefits Mr. Kirschling calculates he would have received during the two-year contract, without any reduction by reason of the duty to mitigate. The record is inadequate with respect to mitigation, thereby precluding the requested relief at this procedural stage.

### III. *Conclusion*

Defendants' motion for summary judgment based on several grounds will be denied in its entirety. Specifically, defendants' motion with respect to the Statute of Frauds, mutuality of obligation and bars on contract enforceability will be denied; defendants' motion with respect to adequacy of plaintiff's protected property interest and the due process protections will be denied; the motion concerning the Board's liability for the actions of Dr. Lysik and the liability of members sued in their individual capacity for punitive damages will be denied; in addition, individual Board members may not assert a defense of qualified immunity; finally defendants' motion with respect to the measure of damages will be denied.